# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801,

                Plaintiff,

v.

REUBEN A. GUTTMAN
TRACI L. BUSCHNER
JUSTIN S. BROOKS
GUTTMAN, BUSCHNER & BROOKS, PLLC
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036,

                Defendants.

Civil No. _____

## COMPLAINT

Plaintiff Grant & Eisenhofer P.A. (the "Firm" or "Plaintiff"), by and through its attorneys Frankfurt Kurnit Klein & Selz, P.C. and Nossaman LLP, as and for its Complaint against Defendants Reuben A. Guttman, Traci L. Buschner, Justin S. Brooks, and Guttman, Buschner & Brooks, PLLC (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of fiduciary duty and tortious interference with contract against Reuben Guttman, who, while purporting to act as a director of the Firm, engaged in a surreptitious and deceptive campaign to solicit Firm clients to leave the Firm to join a new law firm Guttman had created.  Following his departure from the Firm, Guttman wrongfully induced Firm employees to breach their duties to the Firm and sought to induce third parties to breach their agreements with the Firm in order to deprive the Firm of its contractual rights and its entitlement to receive fees.

2.     Guttman and his new law firm, Guttman, Buschner & Brooks PLLC ("the

Guttman Firm") have also wrongfully: sought to deprive the Firm of fees it earned in one or

more matters which Guttman controlled while a director of the Firm; refused to cooperate with

the Firm in submitting the time he and other former Firm lawyers spent on those matters while

employed at the Firm; and, through his counsel, threatened unilaterally to compromise the Firm's

right to fees in connection with settling matters.  Guttman has even refused to agree to put in

escrow funds he received in settlement of cases he worked on extensively while at the Firm, thus

running the risk that Guttman and the Guttman Firm will obtain and dissipate funds belonging to

the Firm before any resolution of their respective interests in such funds.

3.     Traci Buschner is sued hereunder for violating her duties as a Firm attorney and

aiding and abetting Guttman's breach of duty by enabling Guttman to enter the Washington,

D.C. office of the Firm on April 24, 2015 without authorization and to abscond with documents

and other material without the Firm's permission and in defiance of Firm procedures of which

Guttman was aware and Buschner was bound.  Buschner was employed at the Firm when she

conspired with Guttman to take property from the Firm's premises and then, after aiding and

abetting Guttman's wrongful conduct, joined Guttman at the Guttman Firm.  Guttman and

Buschner have refused to account for the property taken from the Firm despite due demand.

Buschner has also refused to provide the Firm with records of the time spent on matters on which

she was working while employed at the Firm.

4.     Justin Brooks is sued hereunder for violating his duties as an attorney at the Firm

by seeking to induce outside attorneys with ongoing business relationships with the Firm to work

instead with the Guttman Firm.  Brooks took these actions while still employed by the Firm and

without the Firm's knowledge or authorization.  When the Firm learned of these improper

2

communications, Brooks' employment was terminated.  Brooks subsequently joined the Guttman Firm, for whose benefit he had been acting while employed at the Firm.

5.     The actions of the Defendants constitute intentional and malicious conduct designed to mislead the Firm, deny clients the right to make an informed choice of their counsel, deprive the Firm of tangible and intangible property and, while still employed at the Firm, to use Firm resources for purposes of self-dealing.

## THE PARTIES

6.     Plaintiff is a Delaware professional association with its principal place of business at 123 Justison Street, Wilmington, Delaware 19801.

7.     Upon information and belief, Guttman is an individual residing in the District of Columbia.

8.     Upon information and belief, Buschner is an individual residing in the District of Columbia.

9.     Upon information and belief, Brooks is an individual residing in the Commonwealth of Pennsylvania.

10.     Upon information and belief, the Guttman Firm is a professional corporation incorporated in the District of Columbia and headquartered in that district.

## JURISDICTION AND VENUE

11.     Jurisdiction for Plaintiff's claim lies with the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1332(a) because the parties reside in different states and because the amount in controversy exceeds $75,000.

12.     This Court has personal jurisdiction over Defendants because Defendants reside or do business in the District of Columbia.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

### Guttman's Tenure at the Firm

14.     The Firm is a law firm with offices in Wilmington, Delaware, New York, New York, Chicago, Illinois and, until earlier this year, Washington, D.C. The Firm frequently represents relators in *qui tam* actions and plaintiffs in securities, corporate governance, false claims, antitrust, bankruptcy, consumer litigation, and other class actions. The Firm currently has 63 lawyers.

15.     Guttman joined the Firm in 2007 as senior counsel, and was made a director effective January 1, 2009. As a director, Guttman shared in the profits of the Firm.

16.     Guttman focused his practice on the False Claims Act, complex litigation and class actions, and worked out of the Firm's Washington, D.C. office.

### The Events of the Spring of 2015

17.     In the spring of 2015, Guttman told Firm management he intended to leave the Firm at the end of 2015. In the weeks after his statement regarding his plan to leave at the end of the year, Guttman's relationship with his colleagues, which had previously involved substantial friction, deteriorated even further. The Firm's management sought to convene a meeting with Guttman, but Guttman initially refused to engage in face-to-face conversations. Although the Firm's management had sought to persuade Guttman to remain at the Firm when he had threatened to resign on previous occasions, on April 14, 2015, the Firm's managing directors had a videoconference in which they asked Guttman to leave the Firm.

18.     The Firm proposed, and Guttman agreed, to engage in an orderly transition regarding his departure, including coordinated notice to Firm personnel and to clients with

respect to their options regarding continued representation.  Because Guttman was then deeply involved in taking depositions in a case called *U.S. ex rel. Kurnik v. Amgen*, No. 1:07-cv-81 (the "*Amgen* Matter")*,* he requested that the Firm table departure discussions and defer telling clients or non-director personnel until after the depositions (then scheduled several days later in April) were completed.  Based on the representation that the delay was in the best interests of the Firm's clients, the Firm agreed.

19.     The Firm continued to hold Guttman out as a director, refrained from approaching clients, and paid Guttman his regular draw while awaiting the promised collaboration.  There were ongoing discussions during this period between a representative of the Firm and a representative of Guttman regarding the optimal way that clients could benefit from the continuing involvement of both the Firm and Guttman.

20.     Having induced the Firm's inaction in anticipation of a coordinated notice to Firm personnel, clients and third parties, Guttman, while still a director, used the delay he had requested in order unilaterally and surreptitiously to solicit Firm clients to leave the Firm and join him at a new firm that he was creating.

21.     On Friday, April 24, 2015, Guttman delivered to the Firm letters dated April 21, 2015 from clients in two significant Firm matters, the *Amgen* Matter and *U.S. ex rel. Brown v. Celgene Corp.*, No. 10-cv-03165 (the "*Celgene* Matter"), purporting to terminate the attorney-client relationship with the Firm in favor of Guttman.

22.     On that same day, without any further notice to the Firm and notwithstanding his agreement with the Firm to defer discussion of his departure so that a coordinated approach could be effected, Guttman delivered to the Firm what purported to be a letter of resignation.

23.     Although Guttman has sought to prevent the Firm from contacting these clients by claiming that he now represents them, the timing of the termination letters – three days before his resignation – leads to the inescapable inference that Guttman was engaged in soliciting clients while still serving as a director of the Firm and after inducing the Firm not to solicit such clients.

24.     Guttman knew that the Firm was relying on his promise to act jointly and, knowing that the Firm would have no opportunity to insure that the clients were fully informed of their rights, induced clients to leave the Firm based solely on his unilateral solicitation.

25.     The Firm has requested that Guttman disclose what information he provided to the Firm clients to induce the termination letters and Guttman, through counsel, has refused to provide it.

26.     Surprised and upset at Guttman's treachery in the face of the parties' agreement on April 14 to delay and then coordinate notice, the Firm treated Guttman's resignation as effective immediately.

**Guttman Recruits Firm Employees to Aid his Scheme**

27.     Late in the evening of April 24, 2015, after his termination, Guttman attempted to re-enter the Firm's Washington, D.C. office, but was prevented from doing so because his employee access card had been deactivated.

28.     Rather than contacting the managing partners to arrange for access to the office, Guttman gained access to the Firm's office through Buschner.

29.     Buschner knew that Guttman had resigned, that his access card had been deactivated, and that the Firm had not given permission for Guttman to enter the premises.  At that time Buschner had already decided to join Guttman at the Guttman Firm and, although she remained employed and had not yet notified the Firm, she acted to benefit Guttman and the Guttman Firm, and to harm the Firm by facilitating his unauthorized access.

30.     Guttman removed boxes of materials from the Firm premises without the Firm's consent or foreknowledge.

31.     Guttman and Buschner have refused the Firm's requests to account for the property taken from the Firm's office after business hours on April 24, 2015.

32.     On April 28, 2015, Brooks, while still employed at the Firm and before the Firm was aware that he intended to join the Guttman Firm, actively solicited business on behalf of the Guttman Firm from lawyers who regularly acted as co-counsel to the Firm, and sought to induce them to use the Guttman Firm for all of their future business instead of continuing their relationship with the Firm.

33.     Brooks was induced to violate his duty of loyalty to the Firm and to work clandestinely against the interests of the Firm by Guttman and/or Buschner.

**Guttman Refuses to Pay the Firm's Fees Rightly Earned in the *Amgen* Matter**

34.     While a director of the Firm, Guttman had primary responsibility for the *Amgen* Matter, a *qui tam* lawsuit in which the Firm represented a relator, Frank Kurnik ("Kurnik").

35.     On December 28, 2010, the Firm entered into a letter-agreement with Kurnik relating to the Firm's representation of Kurnik in the *Amgen* Matter, which set forth the parties' rights and obligations (the "*Amgen* Retainer Agreement").  Specifically, the *Amgen* Retainer Agreement specified that the Firm was entitled to its share of all attorneys' fees that are considered court-awarded, as well as a contingent fee based on the total amount that Kurnik received because of the lawsuit.  In addition, Kurnik was responsible for reimbursing the Firm, from any bounty that he received, for all costs of litigation which the Firm advanced.  He also assigned his right to statutory attorney fees and costs to the Firm.

36.     As of April 24, 2015, the Firm had incurred unreimbursed fees and expenses of approximately $1.9 million in the *Amgen* Matter.

37.    Guttman, Buschner and Brooks, as lawyers who worked on the *Amgen* Matter and supervised others on the case, were well aware of the massive amount of time and the significant expenses incurred by the Firm between April 2014 and April 2015.

38.    The remaining defendant in the *Amgen* Matter is PharMerica Corp. ("PharMerica").

39.    Any settlement with PharMerica will entitle the Firm to its share of the bounty earned by the relator (Kurnik) and statutory attorneys' fees.

40.    However, after unilaterally and surreptitiously inducing Kurnik to terminate the Firm as his counsel, Guttman began a campaign with other plaintiffs' counsel in the *Amgen* Matter to deprive the Firm of its earned fees and disbursements for the benefit of the Guttman Firm.

41.    In addition, Guttman and Buschner have refused to submit the bulk of their time records in the *Amgen* Matter to the Firm for the month of April 2015, even though they were compensated for their work through at least April 24, 2015 and the Firm is entitled to be paid for the substantial time and expenses they expended.

42.    Guttman and Buschner have ignored their obligation to provide their April 2015 time records as part of a scheme to prejudice the Firm's position in any settlement of the *Amgen* Matter and to inflate the Guttman Firm's claim to fees by falsely allocating their Firm time to the Guttman Firm.

43.    In or about late July 2015, despite Guttman and the Guttman Firm's knowledge of the actual fees and disbursements incurred in the *Amgen* Matter, in breach of their fiduciary duty and/or duty of loyalty to the Firm, and in conflict with the *Amgen* Retainer Agreement, their counsel announced that, unless the Firm agreed to a huge discount on its actual fees and

disbursements, they would unilaterally reduce the Firm's claim for statutory fees in settlement

negotiations with PharMerica.  In the ensuing months counsel for Guttman and the Guttman

Firm have on several occasions repeated the threat unilaterally to compromise the Firm's fees

and disbursements.  They have also stated that Kurnik will not honor his obligation to pay the

Firm its share of the relators' bounty.  In so doing, these Defendants have intentionally and

wrongfully interfered with the *Amgen* Retainer Agreement and Kurnik's obligation to submit an

accurate and complete report of the fees and disbursements due the Firm.

**Guttman Interferes with the Firm's Right to Attorneys Fees in the *McCoyd* Matter and Attempts to Divert Money in the *McCoyd* Matter**

44.     While a director of the Firm, Guttman also had primary responsibility for another

*qui tam* matter, *U.S. ex rel. McCoyd v. PharMerica et al.*, No. 1:07-cv-00081 (W.D. Va.,

Abingdon) (the "*McCoyd* Matter") wherein the Firm represented one of the two relators,

Meredith McCoyd ("McCoyd").

45.     On September 24, 2007, the Firm entered into a letter-agreement with McCoyd

confirming that the Firm would take over representation of McCoyd from Guttman's previous

firm, Wolf Haldenstein Adler Freeman & Herz LLP, and instructing that McCoyd's previous

retainer agreement with that firm, dated July 13, 2007, would govern the representation (the

"*McCoyd* Retainer Agreement").

46.     Under the *McCoyd* Retainer Agreement, the Firm was entitled to its share of all

attorneys' fees that are court-ordered, as well as a contingent fee based on the total amount that

McCoyd received as a result of the *McCoyd* Matter.  In addition, McCoyd was responsible for

reimbursing the Firm, from any bounty that she received, for all costs of litigation which the

Firm advanced.  She also assigned her right to statutory attorney fees and costs to the Firm.

47.     On April 22, 2012, counsel for both relators, and the relators themselves, entered into an agreement allocating any future proceeds received from the *McCoyd* Matter between McCoyd and the other relator and directing how the distribution of the funds would be handled. Specifically, they agreed that the funds would be deposited to the Firm's escrow account and then distributed to the parties and their counsel (the "*McCoyd* Distribution Agreement"). Guttman signed the *McCoyd* Distribution Agreement on behalf of the Firm.

48.     While still employed at the Firm and in violation of his duties to the Firm and the *McCoyd* Retainer Agreement, Guttman surreptitiously solicited McCoyd to terminate the Firm's representation and become a client of the Guttman Firm.

49.     Although Guttman notified the Firm that McCoyd was terminating her attorney-client relationship with it, he did not ask the Firm whether it would consent to a modification of the *McCoyd* Distribution Agreement to provide for payment of future proceeds in the *McCoyd* Matter to be made to the Guttman Firm.

50.     Instead, in early May 2015, without notice to the Firm, Guttman contacted counsel for the other relator who signed the *McCoyd* Distribution Agreement and sought to induce him to circumvent the Firm's rights under the *McCoyd* Distribution Agreement and to have all proceeds directed to the Guttman Firm.

51.     Guttman's actions were undertaken in order to induce parties to the *McCoyd* Distribution Agreement to breach the *McCoyd* Distribution Agreement for the benefit of the Guttman Firm, and to enable him to further his scheme to deprive the Firm of its entitlement to fees and reimbursed expenses for the *McCoyd* Matter.

52.     In or about the summer of 2015, despite Guttman and the Guttman Firm's knowledge that the Firm was entitled to a share of the actual fees and disbursements awarded in

the *McCoyd* Matter, and in breach of their fiduciary duty and/or duty of loyalty to the Firm, their

counsel announced that they would not honor the terms of the *McCoyd* Retainer Agreement and

would not pay the Firm its portion of the bounty in the *McCoyd* Matter.  They also declared that

they would only submit a statutory fee amount of approximately $1,500.  In so doing, these

Defendants have intentionally and wrongfully interfered with the Firm's rights under the

*McCoyd* Retainer Agreement and *McCoyd* Distribution Agreement, and with McCoyd's

obligation to submit an accurate and complete report of the fees and disbursements due the Firm.

**The Refusal to Consent to an Escrow Agreement**

53.     After the Firm learned of prospective settlements in the *Amgen* and *McCoyd*

matters, the Firm discussed with counsel for Guttman the necessity of holding in escrow the

attorneys' fee portions of the settlements made with the defendants in those cases pending a

resolution of the attorneys' respective interests.  Such an arrangement was necessary to assure all

counsel that the funds would be intact and available for distribution.  However, after initially

agreeing to an escrow agreement and an escrow agent, on September 2, 2015, counsel for

Guttman advised the Firm that he would not proceed with an escrow arrangement.

54.     Guttman refused to agree to an escrow agreement notwithstanding his knowledge

that the vast majority of the fees in both the *Amgen* and *McCoyd* Matters are the property of the

Firm and that his receipt of funds belonging to the Firm would be unauthorized, unjustified and

in breach of his duty to the Firm not to appropriate property belonging to it.

**FIRST CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty against Guttman)**

55.     The Firm repeats and realleges the allegations in paragraphs 1 through 54 as if

fully set forth herein.

56.     At all relevant times, Guttman was a director of the Firm and owed it fiduciary obligations to act loyally, honestly and fairly, without self-dealing and with the utmost fidelity in all dealings.

57.     Guttman continued to owe the Firm fiduciary duties when he became a former director, including without limitation the duty to cooperate to ensure the Firm received all fees and expenses it was due on cases he handled.

58.     Defendant breached his duty to the Firm, and acted unethically in violation of Rule 8.4(c) of the Rules of Professional Conduct for the District of Columbia, by: (a) breaking his promise to act jointly with the Firm in coordinating his departure, including jointly contacting affected clients; (b) surreptitiously soliciting clients to leave the Firm while still employed as a director; (c) upon information and belief, failing adequately to inform clients of their rights and options with respect to selection of counsel; (d) refusing to provide the Firm with accurate and complete time records for work performed while at the Firm; (e) removing property from the Firm without the Firm's consent or oversight; (f) refusing to account to the Firm for the property removed; (g) disavowing valid time entries in the *Amgen* Matter for personal benefit; (h) allocating time spent on the *Amgen* Matter while at the Firm to the Guttman Firm; and (i) refusing to enter into an escrow agreement to hold funds belonging to the Firm safe and secure.

59.     The Firm has been damaged by these breaches, including *inter alia*, by having paid Guttman for periods during which he was disloyal and engaged in self-dealing; being deprived of the opportunity to notify clients of their rights and options on the level playing field agreed to; being deprived of the ability to know what property was removed from the Firm under cover of night; being deprived of the ability to submit accurate bills reflecting time incurred by Firm lawyers; and being deprived of the ability to keep funds belonging to it safe and secure.

60.     By reason of the foregoing, Defendant is liable to the Firm for damages in an amount to be determined at trial, but in excess of $75,000.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference against Guttman and the Guttman Firm: *McCoyd* Matter)

61.     The Firm repeats and realleges the allegations in paragraphs 1 through 60 as if fully set forth herein.

62.     Guttman and the Guttman Firm were aware of the existence of the *McCoyd* Retainer Agreement and *McCoyd* Distribution Agreement entitling the Firm to various rights in the *McCoyd* Matter, and that the Firm relied on the existence of these agreements in incurring fees and disbursements in the case.

63.     That *McCoyd* Distribution Agreement was separate and apart from the *McCoyd* Retainer Agreement, and survived the termination of the attorney-client relationship between them.  The fee-related provisions of the *McCoyd* Retainer Agreement also survived the termination of the attorney-client relationship.

64.     Despite this knowledge, Guttman and the Guttman Firm tortiously interfered with the Firm's business relationships, the *McCoyd* Retainer Agreement and the *McCoyd* Distribution Agreement by: (a) soliciting Firm clients while still a director of the Firm; (b) attempting to redirect all monies in the *McCoyd* Matter, due to be transferred to the Firm, directly to the Guttman Firm, in contravention of the *McCoyd* Distribution Agreement; (c) inducing McCoyd to breach her obligation to pay the Firm a share of the relators' bounty; and (d) inducing McCoyd to violate her contractual obligations to the Firm by not providing accurate and complete records of the actual fees and disbursements incurred by the Firm.

65.     These actions were designed to enable Guttman and the Guttman Firm to obtain property rightfully belonging to the Firm.

66.     As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred further damages in excess of $75,000, which continue to accrue, including but not limited to damages reflecting lost business, lost profits, and damage to its goodwill in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Tortious Interference against Guttman and the Guttman Firm: *Amgen* Matter)

67.     The Firm repeats and realleges the allegations in paragraphs 1 through 66 as if fully set forth herein.

68.     Guttman and the Guttman Firm were aware of the existence of the *Amgen* Retainer Agreement, and that the Firm relied on the existence of the *Amgen* Retainer Agreement in incurring fees and disbursements in the case.

69.     The fee-related provisions of the *Amgen* Retainer Agreement between the Firm and Kurnik survived the termination of the attorney-client relationship between them.

70.     Despite this knowledge, Guttman and the Guttman Firm tortiously interfered with the Firm's business relationships and the *Amgen* Retainer Agreement by: (a) soliciting Firm clients while still a director of the Firm; (b) seeking to compromise the Firm's right to recover its full fees and disbursements in the *Amgen* Matter; (c) inducing Kurnik to breach his obligation to pay the Firm a share of the relators' bounty; and (d) inducing Kurnik to violate his contractual obligations to the Firm by not providing accurate and complete records of the actual fees and disbursements incurred by the Firm.

71.     These actions were designed to enable Guttman and the Guttman Firm to obtain property rightfully belonging to the Firm.

72.     As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred further damages in excess of $75,000, which continue to accrue, including

but not limited to damages reflecting lost business, lost profits, and damage to its goodwill in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference against Guttman and the Guttman Firm: Additional Matters)

73.     The Firm repeats and realleges the allegations in paragraphs 1 through 72 as if fully set forth herein.

74.     Guttman and the Guttman Firm were aware of the Firm's attorney-client relationships with its clients, and its ongoing relationship with its co-counsel.

75.     Despite this knowledge, Guttman and the Guttman Firm tortiously interfered with the Firm's business relationships by: (a) soliciting Firm clients while still a director of the Firm; (b) inducing Buschner, then a Firm employee, to violate her duties by enabling Guttman to enter the Firm's premises without permission after business hours on April 24, 2015 in order to enable him to remove property without authorization; and (c) inducing, through Brooks, counsel affiliated with the Firm to break their relationships with the Firm and affiliate instead with the Guttman Firm.

76.     These actions were designed to enable Guttman and the Guttman Firm to obtain property rightfully belonging to the Firm.

77.     As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred further damages in excess of $75,000, which continue to accrue, including but not limited to damages reflecting lost business, lost profits, and damage to its goodwill in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty against Buschner)

78.     The Firm repeats and realleges the allegations in paragraphs 1 through 77 as if fully set forth herein.

79.     Buschner was employed by the Firm on April 24, 2015.

80.     On that date, Buschner knew, or should have known, that Guttman had resigned from the Firm and that he had been denied continued access to the Firm's premises.

81.     By allowing Guttman to enter the Firm's premises after business hours on April 24, 2015 and remove property from the Firm, Buschner provided essential assistance to Guttman and enabled him to act contrary to his fiduciary responsibility and to convert Firm property.  This conduct was also unethical in violation of Rule 8.4(a) of the Rules of Professional Conduct for the District of Columbia.

82.     As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred further damages, which continue to accrue, including but not limited to damages in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### (Breach of the Duty of Loyalty against Buschner)

83.     The Firm repeats and realleges the allegations in paragraphs 1 through 82 as if fully set forth herein.

84.     Buschner was employed by the Firm on April 24, 2015, and owed a duty of loyalty to the Firm by reason of her employment as an attorney at the Firm.

85.     On that date, Buschner knew, or should have known, that Guttman had resigned from the Firm and that he had been denied continued access to the Firm's premises.

86.     By allowing Guttman to enter the Firm's premises after business hours on April 24, 2015 and remove property from the Firm, Buschner violated her fiduciary duty, including her duty of loyalty to the Firm.

87.     Buschner acted in this manner because she was seeking to benefit the Guttman Firm, which she would join days after April 24, 2015.

88.     Buschner has also refused, without justification, to provide accurate and complete records of her time in the *Amgen* Matter.

89.     As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred further damages, which continue to accrue, including but not limited to damages in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
### (Tortious Interference against Brooks)

90.     The Firm repeats and realleges the allegations in paragraphs 1 through 89 as if fully set forth herein.

91.     Brooks was employed by the Firm through April 28, 2015, and owed a duty of loyalty to the Firm by reason of his employment as an attorney at the Firm.

92.     Brooks knew that that the Firm retained affiliated counsel to work with it on particular matters.

93.     On or before April 28, 2015, Brooks sought to induce a law firm that had agreed to work with the Firm to end its agreement with the Firm and contract instead with the Guttman Firm.

94.     In so doing, Brooks improperly sought to induce the law firm to breach its agreement with the Firm for the benefit of the Guttman Firm, which Brooks joined within days.

95.     As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred damages, which continue to accrue, including but not limited to damages in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
### (Breach of the Duty of Loyalty against Brooks)

96.     The Firm repeats and realleges the allegations in paragraphs 1 through 95 as if fully set forth herein.

97.     Brooks was employed by the Firm through April 28, 2015, and owed a duty of loyalty to the Firm by reason of her employment as an attorney at the Firm.

98.     Brooks knew that that the Firm retained affiliated counsel to work with it on particular matters.

99.     On or before April 28, 2015, Brooks sought to induce a law firm that had agreed to work with the Firm to use the Guttman Firm for all of their future business instead of continuing their relationship with the Firm.

100.    In so doing, Brooks improperly sought to induce the law firm to breach its agreement with the Firm for the benefit of the Guttman Firm, which Brooks joined within days.

101.    As a direct and proximate result of the conduct alleged above, the Firm has sustained and incurred damages, which continue to accrue, including but not limited to damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Firm prays that the Court enter judgment in its favor and against each Defendant, containing the following relief:

(a)     On the First Claim, damages in an amount to be determined at trial;

(b)     On the Second Claim, damages in an amount to be determined at trial;

(c)     On the Third Claim, damages in an amount to be determined at trial;

(d)     On the Fourth Claim, damages in an amount to be determined at trial;

(e)     On the Fifth Claim, damages in an amount to be determined at trial;

(f)     On the Sixth Claim, damages in an amount to be determined at trial;

(g)     On the Seventh Claim, damages in an amount to be determined at trial;

(h)     On the Eighth Claim, damages in an amount to be determined at trial;

(i)     An award of costs that Plaintiff has incurred in this action, including, but not

limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and

costs to the fullest extent permitted by law; and

(j)     Such other and further relief as the Court may deem just and proper.

Dated:  September 10, 2015                    Respectfully submitted,


                                 /s/John B. Harris
                                 John B. Harris
Nicole Bergstrom
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, NY  10022
Email:  jharris@fkks.com
Email:  nbergstrom@fkks.com
Telephone:  (212) 980-0120
Facsimile:  (212)593-9175

/s/Paul L. Knight
Paul L. Knight (D.C. Bar No. 911594)
Nossaman LLP
1666 K Street, N.W., Suite 500
Washington, DC  20006
Email: pknight@nossaman.com
Telephone:  (202) 887-1400
Facsimile:  (202) 466-3215

*Attorneys for Plaintiff Grant & Eisenhofer P.A.*